J. C. VAN KEMPEN, RECEIVER OF ESTATE OF H. A. BLIJDENSTEIN, V. J. E. LATHAM, TRUSTEE OF E. B. HACKBURN AND J. E. LATHAM, EXECUTOR OF THE ESTATE OF E. B. HACKBURN, DECEASED.

(Filed 28 March, 1928.)

**1. Pleadings—Demurrer—Effect Thereof.**

A demurrer to the complaint admits every material fact properly alleged, and all inferences and intendments as may be fairly and reasonably drawn therefrom by liberal construction, so that actions may be tried on their merits in furtherance of our Code system.

**2. State—Relationship to United States—Force of Federal Judgments Under "Full Faith and Credit" Clause.**

While not specifically so stated in the Constitution of the United States, Art. IV, sec. 1, judgments of the Federal Courts are to be given the same faith and credit in our State as those rendered in other States, and they are conclusive of all matters involved in the adjudication except when vitiated by fraud, or when the parties to be concluded are not properly before the court.

**3. Receivers—Foreign Receivers—Right to Maintain Action in Our Courts.**

A receiver appointed by a foreign nation for the estate of a friendly alien may be permitted by our courts to sue herein under the spirit of comity, when there is nothing involved in the action that may be construed as against our public policy or the rights of our citizens.

**4. Same—Receiver's Certificate.**

In order for the foreign receiver of the estate of a friendly alien to maintain his action in the courts of our State under the spirit of our comity laws, if traversed, he must establish the fact of his receivership by a duly certified transcript to that effect from the court of his appointment.

**5. Same.**

The receiver appointed in a foreign jurisdiction has no extra territorial right to maintain an action in the courts of this State.

APPEAL by plaintiff from *Harris, J.,* at November Term, 1927, of CRAVEN. Reversed.

The material facts: Civil action brought by plaintiff against defendant for the recovery of $30,000 and interest, evidenced by two notes dated 5 August, 1919, one for $5,000, due and payable 5 August, 1921, and the other for $25,000, due and payable 5 August, 1922, made and executed by E. W. Rosenthal and E. B. Hackburn, jointly and severally, payable to Francis P. Garvin, as Alien Property Custodian, Trust No. 23567. The endorsements on the notes were as follows: "Pay to the order of the American Express Company, as attorney in fact for J. C. Van Kempen, receiver of the estate of H. H. Blijdenstein—Alien Property Custodian, by Whitney Central National Bank, depository Trust No. 23567. N. E. Berthal, Asst. Cashier.—American Express Co."

A final decree in the Supreme Court of the District of Columbia, entitled "J. C. Van Kempen, Receiver of the Estate of H. H. Blijdenstein, Plaintiff, v. Thomas W. Miller, as Alien Property Custodian, Guy F. Allen, as Treasurer of the U. S., and J. J. Blijdenstein, Defendants," was filed 19 April, 1921. In reference to the notes in the present controversy, and other property, the final decree in part was as follows: "It is therefore adjudged, ordered and decreed that Thomas W. Miller, as Alien Property Custodian, do forthwith convey, transfer, assign, deliver and/or pay to J. C. Van Kempen, receiver of the estate of H. H. Blijdenstein, the money and other property heretofore specified as held by him as Alien Property Custodian." It is alleged that the said notes and interest are now due and owing plaintiff, in due course and by virtue of the decree he became the owner and holder of the notes. The final decree set forth in the complaint was exemplified in accordance with the act of Congress in reference to authentication of judicial proceedings.

J. E. Latham was made, by a certain instrument duly recorded, trustee of the property of E. B. Hackburn, and managed and controlled same during his lifetime, and was made executor of his will; that he still holds the property as trustee; that the defendant, J. E. Latham, is the duly qualified and acting executor of his estate.

It is further alleged in the complaint: "That on 15 June, 1921, in the District of Arrondissement Court of Justice at Amsterdam, Kingdom of Netherlands, by due order under thereat, the said J. C. Van Kempen, as the receiver of the estate of H. H. Blijdenstein, was duly authorized and directed to bring this suit."

An order on 13 October, 1926, was made by N. A. Sinclair, judge of the Superior Court, which, in part, is as follows: "It appearing to the court that a cause of action exists in favor of J. C. Van Kempen, receiver of estate of H. H. Blijdenstein against J. E. Latham, trustee of E. B. Hackburn, and J. E. Latham, executor of the estate of E. B. Hackburn, deceased: It is therefore ordered, considered and decreed that the said J. C. Van Kempen, receiver of the estate of H. H. Blijdenstein be and he is hereby allowed and permitted to institute a civil action in the Superior Court of Craven County, North Carolina, against the said J. E. Latham, trustee of E. B. Hackburn and J. E. Latham, executor of the estate of E. B. Hackburn, deceased, and to further sue in said action such parties as may be necessary to a determination of said action."

The defendant demurred to the complaint. The court below sustained the demurrer and the plaintiff excepted, assigned error and appealed to this Court.

VAN KEMPEN *v.* LATHAM.

*Frank C. Lee, George T. Willis and Abernathy & Abernathy for plaintiff.*
*Moore & Dunn for defendant.*

CLARKSON, J. It is a general rule that a demurrer is an admission of the truth of every material fact properly averred in the complaint. It admits such facts are properly pleaded and all inference and intendment that may fairly and reasonably be drawn therefrom. The Code system of pleading, which prevails with us, is to have actions tried upon their merits, and to that end pleadings are construed liberally.

From the allegations of the complaint and the reasonable inferences we have: (1) The execution of the two notes now due and owing, aggregating $30,000 and interest, made by E. W. Rosenthal and E. B. Hackburn, jointly and severally; (2) J. E. Latham, as trustee managed and controlled the property of E. B. Hackburn during his lifetime and is still doing so. He died leaving a will, and J. E. Latham is the duly qualified and acting executor of the estate; (3) the transfer of title by the decree of the Supreme Court of the District of Columbia to plaintiff; (4) an order of the judge of the Superior Court authorizing the plaintiff to bring the present action; (5) an order from the court in which plaintiff was receiver authorizing and directing him to institute this action.

In *Webb v. Friedberg,* 189 N. C., at p. 171-2, it is said: "Article IV, sec. 1, Const. of U. S., is as follows: 'Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof.' *Hanley v. Donoghue,* 116 U. S., 1; *Thompson v. Whitman,* 18 Wall., 457; *Andrews v. Andrews,* 188 U. S., 14; *Haddock v. Haddock,* 201 U. S., 562; Const. of U. S., Anno., 1923, p. 478, *et seq.* 'By virtue of Const. U. S., and acts of Congress in pursuance thereof, judgment of other states are put upon the same footing as domestic judgments; they are conclusive of all questions involved in them, except fraud in their procurement, and whether the parties were properly brought before the court.' *Marsh v. R. R.,* 151 N. C., 160; *Miller v. Leach,* 95 N. C., 229."

In *Knights of Pythias v. Meyer,* 265 U. S., p. 30, at p. 33, it is said: "While the judicial proceedings of the Federal Courts are not within the terms of the constitutional provision, such proceedings, nevertheless, must be accorded the same full faith and credit by State courts as would be required in respect to the judicial proceedings of another State. *Hancock Nat. Bank v. Farnum,* 176 U. S., 640, 644, 44 L. Ed., 619, 621, 20 Sup. Ct. Rep., 506; *Embry v. Palmer,* 107 U. S., 3, 9, 27 L. Ed., 346, 2 Sup. Ct. Rep., 25."

On the demurrer the defendant raises the question: "Can a receiver *appointed by a foreign nation* whose authority and right is not disclosed, bring and maintain an action in the courts of this State without first having procured an ancillary appointment upon proper proceedings and thereby place himself and his cause within the jurisdiction of the State courts?" Ordinarily we think so, prima facie at least, in the exercise of general equity jurisdiction.

It is presumed that there were sufficient facts appearing to the judge in making the order reciting "It appearing to the Court that a cause of action exists in favor of" the plaintiff and against the defendant and allowing plaintiff to institute this action against the defendant. We have no statute in this State in reference to foreign receivers.

In *Hall v. R. R.,* 146 N. C., at p. 346, citing numerous authorities, it is held: "The statute of this State (Revisal, sec. 5, subsec. 2, C. S., 8, subsec. 2), positively forbids letters of administration to be issued to a nonresident of the State, and it is to be inferred from this enactment, as well as from the course of decisions of this Court, that the policy of the law is well established to the effect that a nonresident administrator cannot sue in the courts of this State."

In *Kruger v. Bank,* 123 N. C., at p. 18, it is said: "The appointment of receivers in the State of defendant's residence has no extra territorial effect *(Boothe v. Clark,* 17 Howard U. S., 322, 338), though the courts of other States as a matter of comity may permit such receivers to bring actions in their courts where this will not militate to the injury of their own citizens. 6 Thompson Corp., sec. 7334, 7344; *Hunt v. Columbian Ins. Co.,* 55 Me., 290; Beach on Receivers, sec. 685."

In *Person v. Leary,* 127 N. C., at p. 115, this Court said: "We have repeatedly recognized the right of foreign receivers, under the law of comity, to sue in this State. In *Insurance Co. v. Edwards,* 124 N. C., 116, 121, this Court says: 'At this stage of the case we must assume that the suit in Massachusetts was properly conducted, and we see no reason why the courts of that State should not wind up the affairs of its own insolvent corporation. Nor is there any objection to the receiver of a foreign court suing in the courts of this State. What may be the result of that suit is a different matter, but he will be given a hearing.' However, in all such cases there is a preliminary question involving the legal existence of the receiver. His right to sue necessarily depends upon his right to exist, and when this is denied he must prove his right by such evidence as the law requires. The legal identification of a stranger living beyond the jurisdiction of our courts, and coming here only to enjoin the prosecution of a lawful business, is just as important as the identification of one presenting a bank check for payment. Whether or not the check overdraws the account is a matter of little importance, provided the

holder has no right to present it, and of such right his own statement would scarcely be deemed conclusive proof. We think that on a motion for a continuation of the injunction, the plaintiffs should have proved their appointment as receivers by a certified transcript, if the fact had been seriously denied." See *In re Chase, ante,* 143.

"While it is thus seen the courts have generally denied the receiver's extra territorial right of action as a question of strict right, it has frequently been recognized as a matter of comity. Thus, it has been held that receivers of a foreign corporation, appointed in other states, might sue in New York, in their official capacity, in cases where no detriment would result to citizens of the latter State, the privilege of thus suing being regarded as based rather upon courtesy than upon strict right, and the courts declining to extend their comity so far as to work detriment to citizens of their own state who have been induced to give credit to the foreign corporation. And the same doctrine prevails in Minnesota." High on Receivers, 3 ed., sec. 241, p. 208.

In 34 Cyc. of Law and Procedure, at p. 486, it is said: "And in many cases foreign receivers are permitted to sue and assert their rights under their appointments, as a matter of comity, when they have authority to sue in the domiciliary state and apparently without adhering to the strict rule denying extra territorial recognition to receivers as such. The recognition of receivers is by comity only, however, and is not extended to the detriment of citizens or the prejudice of resident creditors," citing numerous cases from different states, among them the *Kruger case, supra.*

In 23 R. C. L., part section 151-2, at p. 142-3, the principle is stated: "In the state courts, however, the privilege of suing in jurisdictions other than that of their appointment is almost universally conceded to receivers now, as a matter of comity or courtesy, unless such a suit is inimical to the interest of local creditors, or to the interest of those who have acquired rights under a local statute, or unless such a suit is in contravention of the policy of the forum. As has been said, this privilege is an exception to the general rule, and not a matter of right, and the granting of the permission is discretionary with the court whose aid is invoked. However, this exception has been so often recognized as to have become as firmly established as the rule itself. Whether a state court should permit an action by a receiver appointed by a court of another state, because of the principle of the comity between the States, is a question exclusively for the courts of that state to decide. The right to maintain it is not founded on any provision of a Federal nature, and the United States courts will refuse to supervise the action of the state court in this particular. A receiver desiring to bring suit in another state than that in which he was appointed should file a petition

in the court in which he wishes to bring this action, stating the proper facts and asking leave to sue therein. . . . Receivers are generally allowed, upon principles of comity, to maintain an action in another State against the citizens thereof upon contracts for the payment of money which such receivers are fully authorized to collect."

"The policy of the United States in all cases of complaint made by foreigners is to extend to them the same means of redress as is enjoyed by our own citizens. . . . In the courts of the United States alien friends are entitled to claim the same protection of their rights as citizens." Moore's International Law Digest, Vol. 4, sec. 536, p. 7.

Ordinarily a receiver cannot maintain an action in another jurisdiction. As a rule, they have no extra territorial jurisdiction. But the weight of authority is to the effect that the privilege may be granted as a courtesy, not as an obligation—by way of comity, and then only when it will not work a detriment to the citizen of the state in which the jurisdiction is sought. In the progress of the age, the rapid transit and quick means of inter-communication have brought the States of the Union and the nations of the earth in closer alliance than ever before. Commerce is extended to every part of the globe—commercial paper travels with commerce. The present action is based on negotiable notes admitted by the demurrer to be due and unpaid and executed by defendant's testator. The demurrer is founded solely on the ground that a receiver appointed in a court of a foreign nation should not be allowed to sue in this jurisdiction, although the receiver alleges ownership of the notes due and owing, permission granted to sue, order in the foreign court giving authority and direction to bring this suit, and on trial would have to produce the notes in this jurisdiction. We must be friendly with other states and nations if we want other states and nations to be friendly with us. On the facts and circumstances of this case, we think the complaint states a cause of action.

There are other questions that we need not now consider. For the reasons given, the demurrer should be overruled.

Reversed.