J. C. VAN KEMPEN, RECEIVER OF ESTATE OF H. H. BLIJDENSTEIN, v. J. E. LATHAM, TRUSTEE OF E. B. HACKBURN AND J. E. LATHAM, EXECUTOR OF ESTATE OF E. B. HACKBURN, DECEASED.

(Filed 21 October, 1931.)

1. **Aliens A a—Receiver appointed by court of friendly foreign nation may maintain action in courts of this State under comity.**

   A receiver appointed by a foreign nation for the estate of a friendly alien may be permitted by our courts to sue herein under the spirit of comity when there is nothing involved in the action that may be construed as against our public policy or the rights of our citizens, although a receiver appointed in a foreign jurisdiction has no extra territorial right to maintain an action in the courts of this State.

VAN KEMPEN *v.* LATHAM.

2. Same—Permission to sue is not necessary in order for receiver of friendly alien to sue in courts of this State.

Where the foreign receiver of a friendly alien has had turned over to him or in his possession under an order of court negotiable notes, properly endorsed, he may sue thereon in the spirit of comity in the courts of our State without special permission from our court therefor.

3. Limitation of Actions B g—Held: action by receiver of friendly alien was not barred, action being brought within year from voluntary nonsuit.

Where a foreign receiver, under the mistake that special permission was necessary for him to sue in the courts of our State, has taken a voluntary nonsuit, and obtains permission to sue in our courts, and brings the identical action again within one year from the nonsuit, the permission obtained to sue will be regarded as surplusage, and if the former action has not been barred by a statute of limitations applicable (441(1), the second action is in time if brought within one year from the time of the voluntary nonsuit, C. S., 415, *Battle v. Davis*, 66 N. C., 256, cited and distinguished, in the present case the receiver bringing action on negotiable notes properly endorsed and in his possession by order of the Supreme Court of the District of Columbia.

4. Same—Where voluntary nonsuit is taken and second action brought within a year the second action is regarded as continuation of first action.

Where a plaintiff elects to abandon his action for any cause, except the ruling of the court against him, it is a voluntary nonsuit and he may commence another action within one year, and it will be considered a continuation of the first action, and will not be held barred by a statute of limitations if the first action nonsuited was not so barred. C. S., 415.

5. Receivers F a — Receiver may bring action in own name without first obtaining permission of court to sue.

Distinctions between actions at law and suits in equity are not regarded under our practice, and a receiver may bring action to realize upon the assets entrusted to him in his own name without special permission of court, under the presumption that he is invested with full power to maintain the action in his own name.

APPEAL by defendant from *Devin, J.,* and a jury, at May Term, 1931, of CRAVEN. No error.

The issues submitted to the jury and their answers thereto, were as follows:

"1. Is the defendant, J. E. Latham, as trustee and executor of E. B. Hackburn, indebted to the plaintiff, and if so, in what amount? Answer: $30,000, and interest.

2. Is the plaintiff's cause of action barred by the statute of limitations? Answer: No."

The court below charged the jury as follows: "(In this action brought by J. C. Van Kempen, receiver, against J. E. Latham, as trustee and executor, the plaintiff having offered evidence tending to show the execution of two notes sued on, the evidence tending to show their execution by the defendant's testator and trustor, E. B. Hackburn, and evidence tending to show the endorsement and transfer of the same to the plaintiff; and, also, evidence as to the authority and right of the plaintiff to maintain this action; and the evidence in support of the plaintiff's action being uncontradicted resolves itself into a matter about which I will give you the following instructions.) To the foregoing portion of the charge in parentheses defendant excepted. The first issue: 'Is the defendant, J. E. Latham, as trustee and executor of E. B. Hackburn, indebted to the plaintiff, and, if so, in what amount? (The court charges you, if you find by the greater weight of the evidence the facts to be as testified by the witnesses, and as shown by the evidence in the case, to answer that issue the sum of the said two notes, to wit, $30,000 and interest.) To the foregoing portion of charge in parentheses defendant excepted. Second issue: 'Is the plaintiff's cause of action barred by the statute of limitations?' (The court charges you, if you find by the greater weight of the evidence the facts to be as testified to by the witnesses and as shown by all the evidence in the case, to answer that issue, No.) To the foregoing portion of charge in parentheses defendant excepted. (That being the view of the law the court takes upon this testimony in the present situation. Therefore, gentlemen, if you find by the greater weight of the evidence the facts to be as testified by the witnesses, and as shown by the evidence, you will answer the issue $30,000, and interest. If you find those are the facts under the instructions of the court.) To the foregoing portion of charge in parentheses defendant excepted. (If you wish me to write those figures for you I will do so. You having so found I will write your answer to the first issue $30,000, and interest.) To the foregoing portion of charge in parentheses defendant excepted. (And the second issue, if you find by the greater weight of the evidence the facts to be as testified you will answer the second issue, No. If you find those are the facts and wish me to write that for you I will do so. You having so found I will write at your request as answered that issue, No.) To the foregoing portion of charge in parentheses defendant excepted. So say you all, gentlemen."

Upon the verdict the court below rendered judgment. Defendant made numerous exceptions and assignments of error, including the exceptions to the charge of the court below as above set forth, and appealed to the Supreme Court. The material exceptions and assignments of error will be considered in the opinion.

*Frank C. Lee, George T. Willis and Abernathy & Abernathy for plaintiff.*

*Moore & Dunn for defendant.*

CLARKSON, J. This action was before this Court on appeal by plaintiff from a demurrer filed by defendant and sustained by the court below. This Court reversed the court below and held that the demurrer should have been overruled. *Van Kempen v. Latham,* 195 N. C., 389. In that case, at p. 394, is the following: "Ordinarily a receiver cannot maintain an action in another jurisdiction. As a rule, they have no extra territorial jurisdiction. But the weight of authority is to the effect that the privilege may be granted as a courtesy, not as an obligation—by way of comity—and then only when it will not work a detriment to the citizen of the state in which the jurisdiction is sought. In the progress of the age, the rapid transit and quick means of the intercommunication have brought the states of the union and the nations of the earth in closer alliance than ever before. Commerce is extended to every part of the globe—commercial paper travels with commerce. The present action is based on negotiable notes admitted by the demurrer to be due and unpaid and executed by defendant's testator. The demurrer is founded solely on the ground that a receiver appointed in a court of a foreign nation should not be allowed to sue in this jurisdiction, although the receiver alleges ownership of the notes due and owing, permission granted to sue, order in the foreign court giving authority and direction to bring this suit, and on trial would have to produce the notes in this jurisdiction. We must be friendly with other states and nations if we want other states and nations to be friendly with us. On the facts and circumstances of this case, we think the complaint states a cause of action." Textwriters and decisions are cited by this Court in that opinion, to sustain the position in overruling the demurrer.

On this appeal it seems as if there is a repetition of the position heretofore taken by defendant, that a foreign receiver could not sue in this jurisdiction. For example, in defendant's brief we find cited to sustain his contentions, the Federal case of *Moore v. Mitchell,* 281 U. S., 18. In that case, we find the following, at p. 24: "He is the mere arm of the state for the collection of taxes for some of its subdivisions and has no better standing to bring suits in courts outside Indiana than have executors, administrators, or chancery receivers without title, appointed under the laws and by the courts of that state. It is well understood that they are without authority, in their official capacity, to sue as of right in the Federal courts in other states." 65 A. L. R., 1354, see anno.

"In *Converse v. Hamilton* (1911), 224 U. S., 243, 56 L. Ed., 749; Am. Cases, 1913D, 1292), the Supreme Court of the United States has reviewed *Booth v. Clark,* and a receiver of a Minnesota corporation was allowed to sue in the courts of another state to recover the double liability imposed by the laws of Minnesota, the Court saying: 'While an ordinary chancery receiver cannot exercise his powers in jurisdictions other than that of the court appointing him, except by comity, one who is a *quasi*-assignee and invested with the rights of his *cestui que trustent* may sue in other jurisdictions, and his right to do so is protected by the full faith and credit clause of the Federal Constitution." 1 Clark on Receivers, 2d ed., chap, 19, sec. 591(f), at p. 811.

It will be noted that defendant cites and discusses the jurisdiction of the United States courts, and relies on the *Moore case, supra,* which is a suit involving a revenue law of another state. Our former decision in this case was based upon comity between foreign nations and different states of the Union. Conceding that the United States courts do not allow or permit a receiver in another jurisdiction, as a matter of comity, to sue for a debt, yet the Federal Court has no control over the state courts in a matter of this kind. The decisions are merely persuasive. *Van Kempen v. Latham,* 195 N. C., at p. 393; 23 R. C. L., part sec. 151-2, at p. 142-3.

The whole matter is well stated in Tardy's Smith on Receivers, Vol. 2, p. 1924: "The general principles involved in the question of the extent of the right of a receiver to sue or assert rights in respect to the receivership property outside of the jurisdiction of his appointment have been a source of controversy for many years. . . . (p. 1925) The international effect to be given to transfers of property by operation of law through the instrumentality of assignees and receivers, and the extra-territorial operation of the title of such officers as established in England, and other foreign countries, is based upon the broad and constantly growing system of international comity, and recognition of the fact that on account of the quickness of transportation of every character, freedom of business relations and easy transference of property rights should be fostered both among states and nations. Following the line of decisions of the earlier English courts upon the subject the courts in the American colonies prior to the Revolution, and many of the state and United States courts since that period, established the doctrine that an assignee or receiver's title to personal property extended only to such property of the debtor as had a *situs* within the state of the assignee or receiver's appointment, and that beyond the state line he had no title or right of possession, or at least such as the court would enforce. As a corollary of this doctrine it was held that a

foreign receiver could not sue or defend and had no standing in a court of foreign jurisdiction. While some of the features of the earlier doctrine are still recognized and enforced in some of the American courts upon the principle of *stare decisis,* yet the modern doctrine as to the receiver's rights to sue in a foreign jurisdiction, and reduce to possession the assets of his principal, or recover his choses in action is well established by the great weight of authority as well as by reason, though there are still some limitations that will be noticed hereafter. Courts of this country have recognized the justice and cogent reasoning of the modern English courts and jurists and have sought to break away from the doctrine of the Court in *Booth v. Clark* (17 How., 322, 58 U. S., 15 L. Ed., 164), which, though not the earliest, yet has been regarded as the leading case upon the subject, sometimes by compelling the debtor to make a formal transfer of his property to the receiver and thus vesting in him the absolute legal title by act of the parties which is recognized and enforced in all jurisdictions. Sometimes the same end has been accomplished by the establishment of a species of interstate comity, by which the judgment, and decrees of other states, and the rights and powers of receivers thereunder have been given an extra-territorial virtue and force, and the right of the receiver to sue and enforce his property rights in a foreign jurisdiction recognized and respected."

Minor, Conflict of Laws (1901), part sec. 118, p. 266: "A receiver, strictly speaking, has no more right to sue in a foreign state than to do any other act. But if a suit instituted by a foreign receiver will not work a detriment or an injustice to the citizens of the forum, he will generally, upon principles of comity, be permitted to appeal to its courts."

Goodrich on Conflict of Laws (1927), p. 442-3: "There is a considerable body of authority, however, which allows suit to be brought locally by a foreign receiver, even though he is not a statutory successor or *quasi*-assignee as described above. Allowing him to sue is frequently called an instance of comity."

"The appointment of a receiver in a court of another state will have no extra-territorial effect, and he can have no recognition in another state, except by comity. Where a receiver was appointed for a foreign corporation in a court of the state where it was created, he may be allowed to become a party to litigation in this State by comity, and not as a right, and this will not be allowed where it would injuriously affect the rights of citizens of this State. But, when such receiver is allowed to come in and sue, his authority should be shown by a duly certified copy of his appointment; and it is said to be a better rule

to have a receiver appointed regularly in the courts here." N. C. Prac. & Proc. (McIntosh), sec. .898, p. 1014.

In *Berger v. Stevens,* 197 N. C., at p. 235-6: "The major contest of defendants is founded on the allegation in the complaint that the plaintiff is a nonresident alien and is living in Nice, in the Republic of France. The question arises: can a nonresident alien sue in the courts of this State? We think a resident of any friendly nation can sue. In 1796 the question arose in this jurisdiction and an English subject was allowed to sue. In a *Per Curiam* opinion, in *Executors of Cruden v. Neale,* 2 N. C., at p. 344, the following observations are made: 'All persons in general, as well foreigners as citizens, may come into this Court to recover rights withheld, and to obtain satisfaction for injuries done, unless where they are subject to some disability the law imposes. Foreigners are in general entitled to sue, unless a war exists between our country and theirs. . . . It is incompatible with a state of national friendship, and is a cause of war, if the citizens of another country are not allowed to sue for and obtain redress of wrongs in our courts.' "

We reiterate the position laid down in the former opinion in this case and cite additional authorities, as the defendant again so earnestly argued against the position taken by this Court in the *Van Kempen case, supra.* We are mindful of the Rule 44 and decisions thereunder that there cannot be a rehearing by means of a second appeal. 200 N. C., p. 839-40.

The sole material question on this appeal is whether the three-year statute, C. S., 441(1), is applicable, which defendant sets up in the answer? We think not.

The notes, the subject of this controversy, were dated New Orleans, La., 5 August, 1919, (1) $5,000, due 5 August, 1921; (2) $25,000, due 5 August, 1922, signed by E. W. Rosenthal and E. B. Hackburn. They are negotiable notes.

On 11 December, 1923, J. C. Van Kempen, receiver of the estate of H. H. Blijdenstein, brought an action against defendant, J. E. Latham, trustee for E. B. Hackburn, deceased, on these two negotiable notes. Summons was served on defendant 12 December, 1923, and complaint duly filed. The action was on the two notes above set forth. "Wherefore, the plaintiff prays judgment against the defendant, J. E. Latham as trustee, of E. B. Hackburn, deceased, and J. E. Latham, executor of the estate of E. B. Hackburn for the sum of $30,000, with interest on the said $30,000 from 5 August, 1919; at 4 per cent; for the cost of this action, and for such other and further relief as the plaintiff may be entitled to."

A judgment of voluntary nonsuit at May Term, 1926, was entered. On 13 April, 1927 (service 16 April, 1927), within a year after the nonsuit, this action was instituted and complaint filed for the recovery on said two notes of $30,000, and interest. "When the plaintiff elects to abandon his action for any cause, except the ruling of the court against him, it is a voluntary nonsuit, and he may commence another action, but he has no right of appeal." N. C. Prac. & Proc., *supra*, sec. 627, p. 700; C. S., 415; *Merrick v. Bedford*, 141 N. C., 504; *Midkiff v. Ins. Co.*, 198 N. C., 568; *Davis v. R. R.*, 200 N. C., 345. The record discloses after a voluntary nonsuit a petition filed by plaintiff setting forth in detail the history of the two notes mentioned above, headed "Petition of J. C. Van Kempen, receiver of estate of H. H. Blijdenstein to sue in Superior Court of Craven County."

On 13 October, 1926, Judge N. A. Sinclair, presiding in the Superior Court of Craven County, found the following facts: "It appearing to the undersigned judge of the Superior Court riding the courts of the Fifth Judicial District, and the court finding as a fact that on 10 December, 1923, there was duly instituted in the Superior Court of Craven County the suit entitled J. C. Van Kempen, receiver of the estate of H. H. Blijdenstein v. J. E. Latham, trustee of E. B. Hackburn and J. E. Latham, executor of estate of E. B. Hackburn, deceased, defendants, and the court further finding that a voluntary judgment of nonsuit was entered in the said action, and the court further finding as a fact that this petition to sue by the plaintiff against the same defendants was made within one year from the entering of judgment of nonsuit in said original action, and it further appearing to the court that a cause of action exists in favor of J. C. Van Kempen, receiver of the estate of H. H. Blijdenstein v. J. E. Latham, trustee of E. B. Hackburn and J. E. Latham, executor of estate of E. B. Hackburn, deceased." An order was made allowing and permitting plaintiff to bring this present action.

The final decree in the Supreme Court of the District of Columbia, filed 19 April, 1921, contained the following: "It appearing unto this Court that the plaintiff, J. C. Van Kempen, is the receiver of the estate of H. H. Blijdenstein, duly appointed and acting pursuant to the order of the District Court of Amsterdam, the Netherlands; . . . That there is now held by the Alien Property Custodian the following money and other property: . . . Note made by Edward W. Rosenthal and E. B. Hackburn jointly for $5,000, due 5 August, 1921. Note made by Edward W. Rosenthal and E. B. Hackburn jointly for $25,000, due 5 August, 1922. It is therefore, adjudged, ordered and decreed that Thomas W. Miller, as Alien Property Custodian, do forthwith convey,

transfer, assign, deliver and/or pay to J. C. Van Kempen, receiver of the estate of H. H. Blijdenstein, the money and other property heretofore specified as held by him as Alien Property Custodian."

These notes were negotiable and were duly endorsed and in the possession of plaintiff at all times and at the time the first suit in this action was instituted. The court order was to "convey, transfer, assign, deliver and/or pay to," etc. We think that under the facts and circumstances of this case that plaintiff in the first suit was entitled to sue. Taking a voluntary nonsuit, and getting permission to sue in the second action was mere surplusage, and this action is not barred by the three-year statute of limitations.

"The time is extended because the new action is considered as a continuation of the former action, and they must be substantially the same, involving the same parties, the same cause of action, and the same right; and this must appear from the record in the case, and cannot be shown by oral testimony." N. C. Prac. & Proc., *supra,* part sec. 126, p. 119; *Young v. R. R.,* 189 N. C., 238; *McLeod v. McNeill,* 195 N. C., at p. 423.

The question arises: Can a receiver sue for the recovery of a money judgment on negotiable notes as in this case and under the assignment to plaintiff, without obtaining special authority from the court? We think so. We find in the case of *Weill v. Bank,* 106 N. C., at p. 10: "While the court may exercise very great control over the receiver, and may direct, in appropriate cases that he shall or shall not do particular things, yet, ordinarily, when he is invested with full power as a receiver, he will have authority to bring appropriate necessary actions without special leave or direction of the court."

In *Battle v. Davis,* 66 N. C., at p. 256, it is written: "A receiver cannot commence any action for the recovery of outstanding property without an order of the court and when such order is made the action must be brought in the name of the legal owner and he will be compelled to allow the use of his name upon being properly indemnified out of the estate and effects, under the control of the court. 3 Dan'l Ch. Pr., 1977, 1991." See High on Receivers, 3d ed., sec. 208. Note at p. 184, "*Battle v. Davis,* 66 N. C., 252. But see *Gray v. Lewis,* 94 N. C., 392. And in *Weill v. Bank,* 106 N. C., 1, it is held under the provisions of the Code of Procedure that a receiver in aid of judgment creditors, upon proceedings supplemental to execution, might sue to recover property of the debtor without leave of court."

"It has been stated as a general rule that a receiver should obtain leave of court before bringing any action. As explaining the former practice, the Court says: 'A receiver cannot commence any action

17—201

for· the recovery of outstanding property without an order of court, and when such order is made the action must be brought in the name of the legal owner, and he will be compelled to allow the use of his name, upon being properly indemnified out of the estate and effects under the control of the court.' The rule is different now, depending upon the general powers conferred in the order of appointment, or in the statute under which the order is made. While the court may limit the powers, yet, when the receiver is invested with full power as a receiver, he may sue without special leave of court; and under the statutes regulating receivers, in the case of banks and other corporations, he is expressly authorized to sue. Under the present practice, where there is no distinction between actions at law and suits in equity, a receiver authorized to sue may sue in his own name or in the name of the person or corporation represented." N. C. Prac. & Proc., *supra*, part sec. 894, at p. 1010.

In the appointment of a receiver, unless specially limited, ordinarily the presumption is that he is invested with full power as receiver and thus may sue without special leave of court. The allegation in the original complaint so· indicates.

The present case is distinguishable from the *Battle case, supra.* The negotiable notes here were transferred, assigned and delivered to plaintiff under the court order, but in the *Battle case* the note was not transferred. Plaintiff ·was the assignee, but under the general power, the receiver *ex mero motu* had the authority to sue without "special leave or direction of the Court." This seems to be the sensible holding and permissible. It may be before a court order could be obtained the receiver may lose valuable rights, which quick action would save. See Norton on Bills and Notes (4th ed.), p. 279-280. *Thompson v. Osborne,* 152 N. C., 408; *Bank v. Rochamora,* 193 N. C., 1; C. S., 446; *Martin v. Mask,* 158 N. C., 436; *Sheppard v. Jackson,* 198 N. C., 627. We see no good reason, under the facts and circumstances of this case, why by comity plaintiff, a foreign receiver, cannot also sue, and it was not necessary for plaintiff to have taken a voluntary nonsuit and thereafter obtained an order to sue. Even the permission could have been allowed in the original action. *S. v. Scott,* 182 N. C., 865. The statute of limitation is not applicable. In *May v. Menzies,* 186 N. C., at p. 144, we find: "Merchants, in trading with each other, should know their rights and responsibilities. Settled law often has the effect of making people certain and careful in their dealings. Honesty in dealing with each other at home, with those of other states, and with the nations of the earth, is the golden cord to bind us together. Good faith—keeping of contracts."

Defendant does not deny the debt, or that it is an honest one. For years plaintiff has attempted to collect these notes, and has been baffled by technical defenses. We think the charge of the court below correct. For the reasons given, in the judgment of the court below we find

No error.