STANDARD LUMBER COMPANY *v.* HENRY.

4-3493

Opinion delivered July 9, 1934.

*A. F. Triplett,* for appellant.

*Barber & Henry* and *Louis Tarlowski,* for appellees.

JOHNSON, C. J. This controversy arises over the alleged superior rights of an attaching creditor of an insolvent foreign corporation and the receiver of said foreign corporation appointed by the courts of this State.

On May 11, 1933, appellant, a creditor of the National Surety Company caused writs of garnishment to be served on F. W. Offenhauser & Company of Texarkana, Arkansas, and the People's Trust Company of Little Rock; and on May 15, 1933, caused a writ of garnishment to be served on Taylor & Company. Each of said garnishees answered the writs by admitting indebtedness or liability to a certain extent in favor of the National Surety Company. On May 16, 1933, appellee, E. A. Henry, was appointed ancillary receiver of and for the National Surety Company by the courts of this State. Thereafter, appellee, as such receiver, filed his intervention in appellant's action pending in the Pulaski Chancery Court in which the receiver asserted a paramount right or claim to the funds in the possession of all said garnishees, and, upon trial thereof, the chancery court determined that the receiver's rights were superior and paramount to appellant's garnishments, and this appeal is therefrom.

The receiver's asserted superior rights must be tested by the laws of this State. The applicable insolvency laws of this State are §§ 5885 to 5893, inclusive, Crawford & Moses' Digest. Section 5886 provides: "The receiver shall intervene in every case in which the property of such insolvent debtor has, within ten days before the filing of such petition, been attached, and, upon such receiver's motion, every such attachment shall be dissolved and the attached property shall be turned over to such receiver upon the payment by the

receiver of all costs which shall have accrued in the attachment suit."

Appellant contends that the cited sections of Crawford & Moses' Digest have no application to the facts in this case because: First, said sections apply only to residents of the State of Arkansas and can not be invoked by or extended to foreign corporations. This contention is made, not because the statute excludes such foreign corporations, but because they do not expressly designate them as a class to be benefited thereby. We perceive no good reason why the statutes cited *supra* should not apply to an insolvent foreign corporation which comes within its purview as effectually as to a domestic corporation. If the insolvent foreign corporation has property and creditors in this State, just why it should not be administered by the courts of this State is not pointed out in briefs. The cited statutes do not exclude foreign corporations by its terms, and we believe upon logic and reason that the insolvency laws in this State do apply to insolvent foreign corporations to the extent of administering such property as may be found within the boundaries of this State for the benefit of creditors in this State. In *Franklin* v. *Mann*, 185 Ark. 993, 50 S. W. (2d) 606, it was contended that certain insurance laws in this State were applicable to resident insurance companies only and not to foreign corporations, but, after citing § 11 of art. 12 of the Constitution of 1874, we specifically decided that the Legislature had the intent and purpose of protecting all persons interested in insolvent insurance companies and that the insurance laws were applicable to such foreign corporations.

Neither can we agree that as a sequence of this view the assets of a foreign corporation in the hands of a State receiver must pass from this State to the State of the domicile of the foreign corporation for administration and distribution. It is well settled by authority that a foreign receivership can not divest the possessions and control of property situated in this State as against the rights of the citizen creditors of

this State. No rule of comity is breached by enforcing our own laws in preference to the laws of other States. *Choctaw C. & M. Co.* v. *Williams-Echols Dry Goods Co.,* 75 Ark. 365, 87 S. W. 632, and authorities there cited.

It is next urged that the insolvency statutes do not apply because, as it is said, the National Surety Company did not invoke the aid of the courts of this State in the appointment of the receiver. The nature and kind of proceedings which invoked jurisdiction in the appointment of the receiver is not before us for determination. It suffices to say, we must presume that the receiver was rightfully appointed by the court which effected it, and especially is this true in a collateral attack on such appointment as this appears to be. The view here expressed in no wise conflicts with the holding of this court in *Walker* v. *McMillan,* 187 Ark. 586, 61 S. W. (2d) 455, but is in full accord with it.

Next, it is insisted that § 5886, Crawford & Moses' Digest, *supra,* does not provide for the dissolution of garnishment proceedings, but applies only to attachments. This is the letter of the statute. We are cited *McGuire* v. *Barnhill,* 89 Ark. 209, 115 S. W. 1144, as supporting this contention. If a garnishment proceeding were the same thing as an execution, then the case referred to would be decisive, but such is not the fact.

The question here presented is, does attachment as used in the statute include garnishments? Practically, if not all, the courts agree that garnishment is a mode of attachment. Rood on Garnishment, § 192, and authorities therein cited. 12 R. C. L., § 2, p. 775, defines garnishment as follows: "Garnishment has very properly been defined as an attachment by means of which money or property of a debtor in the hands of third parties, etc."

We conclude, therefore, that garnishment proceedings are included in the word "attachment" as appears in the statute.

It follows from what we have said that the trial court was correct in holding that our insolvency statutes were applicable to the facts of this case, and that the rights of the receiver were superior and paramount

to those asserted by the creditor under the garnishment proceedings.

The net result of our view is that the assets of the foreign corporation were rightfully determined as belonging to the State receivership for administration and distribution by the court of this State, and, after paying costs of administration in this State, so much of the balance as may be necessary should be distributed to creditors in this State *pro rata* or according to law or the rules and usages of equity courts, and any balance remaining should be paid to the domiciliary receivership.

The decree appealed from, conforming to the views here expressed, should in all things be affirmed.

BUTLER, J., concurs.