PONTIAC TRUST CO. *v.* NEWELL.

1. Receivers—Power to Sue in Other Jurisdictions—Corporate Assets.

Although a receiver is regarded as the arm of the court appointing him and ordinarily has no authority beyond the territorial jurisdiction of that court, yet, in the absence of a statute granting authority, as a matter of comity, in other jurisdictions he is permitted to protect assets of corporation for which he is receiver when it does not work a detriment to citizens of State in which jurisdiction is sought.

2. Corporations—Effect of Dissolution on Assets.

Dissolution of a corporation effects a transfer of its assets to those beneficially interested.

3. Same—Stockholders—Dissolution—Parties.

Principal stockholder of foreign corporation became beneficially interested in its assets upon dissolution and was a proper party to suit to protect its property from misappropriation.

4. Receivers—Appointment.

Regularity of appointment of a receiver may be attacked only in the forum of appointment.

5. SAME—WASTE OF CORPORATE ASSETS.
   Receiver appointed by foreign court, *held,* entitled to maintain
   bill to enjoin dissipation and waste of corporate assets.

6. CORPORATIONS—DISSOLUTION—STOCKHOLDERS — ASSUMED NAME—
   MISAPPROPRIATION OF ASSETS BY STRANGERS.
   Claim that stockholder of a dissolved corporation has been trans-
   acting business under an assumed name without complying with
   statute does not affect his title or interest in the property
   formerly belonging to corporation nor give strangers right to
   misappropriate property either of corporation or stockholder
   (2 Comp. Laws 1929, § 9825 *et seq.,* as amended by Act
   No. 274, Pub. Acts 1931).

7. SAME—WASTE—INJUNCTION.
   Injunction is appropriate preventive remedy to protect assets of
   corporation, or those beneficially interested upon its dissolution,
   where strangers interfere or threaten to interfere with its
   assets.

8. EQUITY—CORPORATIONS—DIVERSION OF BUSINESS BY FORMER EM-
   PLOYEE.
   One who was employed by principal stockholder of foreign cor-
   poration to carry on the business, thereby gaining access to
   books, records, customers lists and mail, and takes advantage
   of information thus gained in his attempts to divert business
   to newly-formed domestic corporation of same name is not
   entitled to equitable relief on cross-bill in furtherance of his
   scheme.

9. APPEAL AND ERROR—INADEQUACY OF RECORD.
   Decree for defendants upon cross-bill after hearing on motion to
   dissolve injunction prayed for in bill and for hearing on the
   merits at which no testimony was introduced is reversed on
   appeal, where record is inadequate.

10. CORPORATIONS—TRADE-NAME—GOOD WILL.
    A defunct corporation has no trade-name or good will to protect.

Appeal from Oakland; Doty (Frank L.), J. Sub-
mitted January 4, 1934. (Docket No. 35, Calendar
No. 37,364.) Decided April 3, 1934. Rehearing de-
nied June 4, 1934.

Bill by Pontiac Trust Company, as receiver of
Michigan Refining Works, Inc., a Delaware corpo-

ration, and Charles Nisbett against Jesse S. Newell and Michigan Refining Works, Inc., a Michigan corporation, to restrain misappropriation of assets, alleged illegal use of trade-name and for other relief. Cross-bill by defendants against plaintiffs to restrain alleged unfair competition with business of defendant corporation. Decree for defendants on cross-bill. Plaintiff Nisbett appeals. Reversed and remanded.

*C. M. Van Benschoten,* for plaintiff Nisbett.

*R. M. Connor,* for defendant Newell.

Potter, J. Pontiac Trust Company, as receiver, and Charles A. Nisbett, plaintiffs, filed a bill of complaint against Jesse S. Newell and the Michigan Refining Works, Inc., a Michigan corporation, to restrain them from interfering with or molesting the property or business or customers of plaintiff Nisbett or of the Pontiac Trust Company, receiver of the Michigan Refining Works, Inc., a Delaware corporation, or from diverting from the postoffice or the express office in Pontiac, Michigan, the mail or express addressed to the Michigan Refining Works, Inc., or from collecting or receiving any of the moneys or property of that company; and from using the name of Michigan Refining Works, Inc., the mailing list or trade-name or advertising of the Michigan Refining Works, Inc., a Delaware corporation.

Defendants filed answer in the nature of a cross-bill denying all material allegations in plaintiffs' bill of complaint. Defendant Jesse S. Newell admits he went to Pontiac, February 15, 1932; says plaintiff Charles A. Nisbett was too sick to operate the plant of the Michigan Refining Works, Inc., a Delaware

corporation, and that he, Newell, took charge of running the plant and continued therein until January 25, 1933. He alleges the Michigan Refining Works, Inc., a Delaware corporation, has been dissolved by an order of the Delaware court; the three-year period set forth in the general corporation law of Delaware for winding up the affairs of dissolved corporations has expired; the Delaware corporation is entirely wound up, finished, done and wholly out of the picture; there never was any pretense at reorganization or reincorporation of the business of the Michigan Refining Works, Inc., a Delaware corporation; the business of such corporation was abandoned both under the laws of Delaware and under the laws of Michigan; the conduct of such business by the plaintiff Nisbett, after the expiration of the three-year period allowed for winding up the affairs of the corporation under the Delaware law, was in defiance of the Delaware court, and Nisbett was guilty of the breach of the laws of Michigan in conducting the business for the reason he never filed any fictitious or assumed-name certificate as required by the laws of Michigan (2 Comp. Laws 1929, § 9825 *et seq.*, as amended by Act No. 274, Pub. Acts 1931); and defendant Newell thereupon caused the Michigan Refining Works, Inc., a Michigan corporation, to be organized and created under the laws of Michigan; and it is entitled to such name and is also entitled to an injunction against the plaintiffs to restrain unfair competition with its business.

An answer to defendants' cross-bill was filed. Defendants moved to dissolve the injunction issued upon the filing of the bill of complaint. The case was brought on for hearing on the motion to dissolve the injunction and for hearing on the merits.

Charles A. Nisbett was engaged in the operation of a gold and silver refining plant in Pontiac for more than 50 years. About 1920 the business was incorporated under the name of Michigan Refining Works, Inc., under the laws of Delaware, having its principal office and place of business at Pontiac, Michigan. In 1929 it seemed advisable the Delaware corporation be dissolved. An application was made to the Delaware court for its dissolution and a certificate of dissolution was issued by the secretary of State, November 1, 1929. In September, 1930, an application was made for the appointment of a receiver, and October 3, 1930, William S. Potter of Wilmington, Delaware, and the Pontiac Trust Company of Pontiac, Michigan, were appointed receivers of the Michigan Refining Works, Inc. The Pontiac Trust Company accepted the trust, gave a bond in the sum of $60,000, qualified as receiver and entered into the discharge of its duties and it claims a right to maintain this bill. Defendants made a motion to dissolve the injunction. There was no hearing on the merits. No proof was taken upon the trial. The hearing consisted of conversations between counsel for the respective parties and an attempt upon the part of the trial court to settle the controversy, after which a decree was entered in favor of defendants on the cross-bill. Plaintiffs appeal. The case must be disposed of upon the record. The bill of complaint states a cause of action. Its allegations are denied. The court dismissed the bill of complaint and granted affirmative relief on the answer in the nature of a cross-bill to defendants which went to the merits of the case.

(1) Defendants claim the Pontiac Trust Company, not having been appointed ancillary receiver by the Michigan court, is not a proper party plaintiff. It was appointed by the court of Delaware, and

is an officer of the court appointing it. A receiver is regarded as the arm of the court, and ordinarily has no authority beyond the territorial jurisdiction of the court by which it was appointed. Though a receiver appointed by the court of a foreign jurisdiction has no legal right, as a matter of law, in the absence of statute granting such authority, to sue in any jurisdiction other than that of appointment, by the great weight of authority such receiver, as a matter of comity, may do so. 8 Thompson on Corporations (3d Ed.), § 6379; 16 Fletcher's Cyclopedia of Corporations (Perm. Ed.), § 7845; 34 Cyc. p. 486; 53 C. J. pp. 393, 394; 23 R. C. L. pp. 142, 143; Beach on Receivers (2d Ed.), § 685; High on Receivers (4th Ed.), § 241; note to *Converse* v. *Hamilton,* 224 U. S. 243 (32 Sup. Ct. 415), in Ann. Cas. 1913D, p. 1292; note to *Gilman* v. *Ketcham,* 84 Wis. 60 (54 N. W. 395), in 23 L. R. A. 52, 36 Am. St. Rep. 899; note to *Fowler* v. *Osgood,* 72 C. C. A. 276 (141 Fed. 20), in 4 L. R. A. (N. S.) 824; *Choctaw Coal & Mining Co.* v. *Williams-Echols Dry Goods Co.,* 75 Ark. 365 (87 S. W. 632, 5 Ann. Cas. 569).

"It seems a churlish and ungracious course, if not an example of improvident judgment, to hold out against the generous comity of the many States which recognize the rule of interstate courtesy upon this subject." *Newsum* v. *Hoffman,* 124 Tenn. 369 (137 S. W. 490).

"The weight of authority is to the effect that the privilege may be granted as a courtesy, not as an obligation—by way of comity, and then only when it will not work a detriment to the citizen of the State in which the jurisdiction is sought." *Van Kempen* v. *Latham,* 195 N. C. 389 (142 S. E. 322).

The rule in New York is thus stated:

"The laws and proceedings of other sovereignties have not, indeed, such absolute and inherent vigor

as to be efficacious here under all circumstances. But, in most instances, they are recognized by the courtesy of the courts of this State; and the right of foreign assignees or receivers to collect, sue for, and recover the property of the individuals or corporations they represent, has never been denied, except where their claim came in conflict with the rights of creditors in this State. All that has been settled by the decisions, to which we have been referred on this subject, is, that our courts will not sustain the lien of foreign assignees or receivers in opposition to a lien created by attachment under our own laws." *Runk* v. *St. John,* 29 Barb. (N. Y.) 585.

We have no statute regulating the right of foreign receivers to sue in our courts, nor do we have any statute which prevents their suing.

The authorities above cited fairly represent the rule in Michigan. *Graydon* v. *Church,* 7 Mich. 36; *Baldwin* v. *Wayne Circuit Judge,* 101 Mich. 119 (25 L. R. A. 739); *Wheeler* v. *Dime Savings Bank,* 116 Mich. 271 (72 Am. St. Rep. 521).

"It is a principle now generally acted upon by the courts that a receiver or other trustee appointed in another State will be permitted, on the principle of comity, to bring an action in the domestic forum for the purpose of collecting the assets of the insolvent for distribution, in accordance with the laws of the jurisdiction within which the receiver has been appointed, when so to do will not contravene the rights of citizens of the State in which the action is brought." *Baldwin* v. *Wayne Circuit Judge, supra.*

The Pontiac Trust Company, receiver, appointed by the court of Delaware, was not barred from instituting suit for the protection of the property of the corporation of which it was receiver because it was not appointed by the court of Michigan.

(2)   Defendants contend plaintiff Nisbett has no standing in court; that the Delaware corporation has been dissolved. Plaintiff Nisbett was the principal stockholder of the Delaware corporation, prior to its dissolution. At the early English common law, corporate charters were granted by letters patent from the crown and upon the dissolution of the corporation, its assets escheated to the crown. This was upon the theory that corporations were authorized by letters patent to do certain things which the crown, in the exercise of its prerogative powers, might otherwise do. A corporate charter was a delegation of sovereign power—a grant of power to exercise corporate franchises. The property of the corporation was so far impressed with a public purpose that upon the dissolution of the corporation, the property having been dedicated to a public purpose which might have been carried out by the crown itself, continued after corporate dissolution to belong to the public as represented by the crown. This doctrine never obtained in Michigan.

Corporations are here organized under general laws. They are regarded as aggregations of individuals having specified powers and privileges conferred by law upon those who comply with the requirements of the statutes providing for their creation. Ordinarily private corporations belong to the stockholders, and the assets of a private corporation for profit, upon the dissolution of the corporation, belong to the stockholders or members, as of the date of its dissolution. Such stockholders, after the claims of creditors are satisfied, are entitled to have the assets of the corporation divided between them, and if any of them die between the date of dissolution and the date of distribution, such property passes to their heirs or personal representatives.

The modern law of corporations so far differs from the ancient common law that the dissolution of a corporation is more nearly analogous in its effects upon the property of the corporation to the death of a natural person. Dissolution merely has the effect of passing the title of the corporate property, subject to the rights of creditors, to the stockholders or members of the corporation. Dissolution of a corporation does not destroy its property. It effects a transfer thereof to those whom the law recognizes as the beneficial owners thereof. So if the corporation here involved has been dissolved, plaintiff Nisbett became beneficially interested in its assets and as a person beneficially interested in such assets had a right to invoke the aid of the court for the protection of such property from misappropriation by defendants.

(3) It is contended the receiver, the Pontiac Trust Company, has been discharged. No record of the discharge of plaintiff Pontiac Trust Company as receiver by the Delaware court was introduced in evidence. It was apparently acting at least as a *de facto* receiver under and by virtue of its appointment as such, acting under the color of office. Color of office is a pretense of official right to do an act made by one who has no such right; a claim or assumption of right to do an act by virtue of an office made by a person who is legally destitute of any such right. 11 C. J. p. 1226; 1 Bouvier's Law Dictionary (Rawle's 3d Rev.), p. 527.

(4) Defendants may not in this proceeding attack the regularity of the appointment of the trust company as receiver. If it desires to question the right of the receiver to act as such, it should do so by *quo warranto* in the forum of its appointment. *Howard* v. *Palmer,* Walk. Ch. 391; *Skinner* v. *Lucas,* 68 Mich. 424.

(5)   There is a distinction generally recognized between a receiver of a corporation and a receiver of its property.  While a receiver of a foreign corporation may be appointed only in the jurisdiction of its domicile, that does not prevent the appointment of a receiver of the property of a foreign corporation in a State other than its domicile for the purpose of collecting and preserving its assets to pay creditors in the State where its property is located.

Both plaintiffs on the face of the bill of complaint have sufficient legal status here to maintain the bill of complaint for the purpose of enjoining the dissipation and waste of the assets of the corporation, and in case of its dissolution if the title has devolved upon the plaintiff Nisbett, to prevent defendants from misappropriating his property.

(6)   It is claimed plaintiff Nisbett has been transacting business under an assumed name, without complying with the Michigan statute (2 Comp. Laws 1929, § 9825 *et seq.,* as amended by Act No. 274, Pub. Acts 1931).  That does not affect his title or interest in the property which formerly belonged to the corporation, nor give defendants any right to misappropriate the property either of the corporation or of Mr. Nisbett.

(7)   The Pontiac Trust Company having been appointed by the Delaware court, should account to the Delaware court for all property which came into its hands as receiver, and upon such accounting all parties having an interest in such assets as owners or creditors have a right to be heard.  When persons, other than the receiver, have property in their hands which should be in the hands of the receiver, or when any person diverts or attempts to divert from the receiver property which belongs to the receiver, such receiver may take all appropriate steps in law or equity to reduce such property to

possession and protect it from being diverted from its lawful custodian.

If defendants, as alleged in the bill of complaint, have interfered with or threaten to interfere with assets of any kind which belong to the Delaware corporation, or to Mr. Nisbett, injunction is an appropriate preventive remedy. If the allegations of the bill of complaint are true, defendant Newell is not in a court of equity with clean hands. The bill alleges he was an employee of Nisbett in carrying on the Pontiac business, and in the course of his employment had access to the books, papers, records, accounts, customers lists and mail belonging to that business, and, taking advantage of the information gained in the course of that employment, he is attempting to use and is using that information to divert the business he was employed to promote and protect into his own hands, and has incorporated the Michigan corporation with the same name as the Delaware corporation as a device and instrumentality to accomplish his purpose. If the allegations of the bill of complaint are true, he is not entitled to the aid of a court of equity in carrying out such a design or scheme. Wrongdoers are not entitled to equitable relief.

Decree reversed, with costs. Case remanded to the trial court for further proceedings.

NELSON SHARPE, C. J., and NORTH, FEAD, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred with POTTER, J.


WIEST, J. (concurring). I concur in the reversal because of inadequacy of the record, but think the circuit judge should be advised upon rehearing, if the proofs establish the dissolution of the corporation, to follow our holding in *Grand Rapids Trust*

*Co.* v. *Haney School Furniture Co.,* 221 Mich. 487 (27 A. L. R. 1020), to the effect that a defunct corporation has no trade-name to protect; that good will cannot exist without a going concern and the receiver of a defunct corporation cannot enjoin use by another of the old corporate name.

NORTH, FEAD, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred with WIEST, J.